FILED

2017 May-11  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | : | |
| | : | **CIVIL ACTION NO.** |
| **[REDACTED FOR PRIVACY]**, | : | _____ |
| | : | |
| *Relators-Plaintiffs*, | : | **SEALED UNDER 31 U.S.C. § 3730(b)** |
| | : | |
| **v.** | : | |
| | : | **COMPLAINT AND JURY DEMAND** |
| **[REDACTED];** | : | |
| **[REDACTED]; AND [REDACTED];** | : | |
| | : | **DO NOT PLACE IN PRESS BOXES** |
| | : | |
| | : | **DO NOT POST ONLINE** |
| *Defendants*. | : | |
| | : | **DO NOT MAKE PUBLICLY AVAILABLE** |
| | : | |
| | : | |

## FALSE CLAIMS ACT COMPLAINT
## FILED UNDER SEAL

*Serve on United States of America care of the following:*

Robert O. Posey
United States Attorney
Northern District of Alabama
1801 4th Avenue North
Birmingham, Alabama 35203

Jeff Sessions
Attorney General of the United States
Department of Justice
10th & Constitution Aves. N.E.
Washington, DC 20530

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | : | |
| | : | |
| **RICH CHIBA AND DRAKE MAPLES,** | : | **CIVIL ACTION NO.** |
| | : | _____ |
| | : | |
| *Relators-Plaintiffs,* | : | **SEALED UNDER 31 U.S.C. §** |
| | : | **3730(b)** |
| **v.** | : | |
| | : | **COMPLAINT AND JURY** |
| **GUNTERSVILLE BREATHABLES,** | : | **DEMAND** |
| **INC.; R. CHRISTOPHER LUMPKIN;** | : | |
| **AND TORI CHASE HANDLEY** | : | **DO NOT PLACE IN PRESS** |
| | : | **BOXES** |
| *Defendants.* | : | |
| | : | **DO NOT POST ONLINE** |
| | : | **DO NOT MAKE PUBLICLY** |
| | : | **AVAILABLE** |

## COMPLAINT

This Complaint is filed by Relators Rich Chiba and Drake Maples against Defendants Guntersville Breathables, Inc., R. Christopher Lumpkin, and T. Chase Handley.

## I.    Summary of the Case

Relators Rich Chiba and Drake Maples have sued in the name of the United States Government to recover damages and civil penalties arising from false and fraudulent claims the Defendants submitted to the Department of Homeland Security and U.S. Customs & Border Protection on Forms 7501.

**False Claims Act Complaint | 2**

Defendant Guntersville Breathables, Inc. wholesales and distributes apparel products under the trade name frogg toggs® and submits approximately 150 completed Forms 7501 to Customs & Border Protection annually, and makes false representations on those forms to avoid paying customs duties. Defendant Chris Lumpkin is the logistics manager and freight forwarder for Guntersville Breathables. Lumpkin is the architect of the scheme to defraud the Government. Defendant Chase Handley is the chief financial officer of Guntersville Breathables and an active participant in the scheme to defraud the Government of duties it is owed.

Guntersville Breathables purchases from foreign companies component products to make boot-foot waders. These products are (1) a boot and (2) a garment upper, which are attached or glued together to make the final product. Guntersville Breathables pays a 37.5% duty for each imported unit, but understates the value of the imported boot-foot wader units on its Form 7501. Each unit is declared at approximately 60% of the value, which represents the value of only one of the component products and does not adequately state the value of the finished product. Guntersville Breathables falsely certifies this lower amount listed on each Form 7501, which it submits to Customs & Border Protection. Relators estimate that the knowing and fraudulent evasion of customs duties by Guntersville Breathables deprived the United States of approximately $700,000 it was owed.

Guntersville Breathables also imports knee boots. These items are delivered for sale in Alaska and, because they are classified as personal protective equipment, they should be charged a 37.5% duty. Lumpkin, however, has caused those products to be reported to Customs & Border Protection at a rate of only 9%. This scheme has continued over a period of at least seven years. As a result of this scheme, Guntersville Breathables has deprived the United States of $200,000 in additional customs duties it was owed.

**[Remainder of page left blank intentionally.]**

## II.    Table of Contents

I.     Summary of the Case ........................................................................... 2

II.    Table of Contents ................................................................................ 5

III.   Parties ................................................................................................... 6

   A.   *Relators* ............................................................................................. 6

   B.   *Defendants* ......................................................................................... 8

IV.    Jurisdiction and Venue ....................................................................... 9

V.     Governing Law: The False Claims Act ........................................... 10

VI.    Laws Governing Payment of Customs Duties ................................ 11

VII.   Factual Allegations ............................................................................ 13

   A.   *Guntersville Breathables Purchases Products from China for Sale in the United States.* ................................................................................... 14

   B.   *Guntersville Breathables Documents its Purchases with Purchase Orders.* .............................................................................................. 15

   i.   *Guntersville Breathables Documents Boot-Foot Wader Purchases with Separate Purchase Orders from Its Suppliers.* ................................. 15

   ii.  *Knee-High Insulated Boots are Invoiced in a Different Way than the Boot-Foot Waders.* ................................................................................... 16

   C.   *Guntersville Breathables Submits Forms 7501 that Fraudulently Misstate the Value of Imported Products.* ...................................................... 16

   i.   *Boot-Foot Waders* ............................................................................ 17

   ii.  *Knee-High Insulated Boots* ............................................................. 18

   D.   *Lumpkin and Handley Conspire to Create and Execute a Scheme for Guntersville Breathables to Defraud the Government.* ..................... 20

VIII.  Causes of Action ................................................................................ 25

IX.    Prayer for Relief and Jury Demand ................................................ 28

[Remainder of page left blank intentionally.]

### III.   Parties

1.     The Relators and each of the three Defendants are described reliably in turn below.

#### A. Relators

2.     Relator Rich Chiba is a citizen of Alabama and the United States of America. Relator brings this civil action for violations of 31 U.S.C. § 3729 *et seq.* for himself and for the United States Government under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)(1).

3.     Chiba has more than 15 years' experience negotiating and sourcing products from China and other Asian markets for United States apparel manufacturers.

4.     Chiba has participated in specific activities, including tracking products from Asian markets to their destinations in the United States through freight forwarders.

5.     Chiba is the former executive vice president of manufacturing for Guntersville Breathables. He served in that capacity from approximately January 2011 through February 2015, and worked as director of manufacturing before that.

6.     At Guntersville Breathables, Chiba was responsible for tracking shipments of goods between Chinese suppliers and the domestic import points used by Guntersville Breathables.

7.     Relator's direct and independent knowledge was obtained inside Guntersville Breathables where he performed many job functions that directly relate to the wrongful conduct alleged here.

8.     Relator Drake Maples is a citizen of Alabama and the United States of America. Relator brings this civil action for violations of 31 U.S.C. § 3729 *et seq.* for himself and for the United States Government under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)(1).

9.     Maples is the former vice president of sales and CEO of Guntersville Breathables, where he worked from approximately May 2005 to September 2014.

10.    In his positions with Guntersville Breathables, Relator gained first-hand knowledge of the operation of all aspects of Guntersville Breathables.

11.    Maples worked directly with and communicated with the Asian suppliers used by Guntersville Breathables to source their products from China and other locations.

12.    Maples was responsible for budgeting and sales associated with the company's products from 2005 to 2014, and all day to day management functions of the Arab, Alabama facility and staff of 75 from 2008 to 2014.

13.    As shown in this Complaint, Relators neither planned nor initiated any of the schemes alleged here. They were, however, responsible for the ongoing business of Guntersville Breathables and as such may provide reliable allegations

regarding the schemes alleged here. In summary, Relators had access to all financial and billing information (including specific purchase orders, Guntersville Breathables' internal financial reporting system, and reports showing the customs duties actually paid by Guntersville Breathables), vendor information, and various databases and systems used to track payments and financial information.

### B. Defendants

14.     Defendant Guntersville Breathables, Inc. (Guntersville Breathables) is an Alabama corporation with its principal office located at 131 Sundown Drive NW Arab, AL 35016. It has operated since approximately 1996 and does business under the trade name frogg toggs®. Guntersville Breathables makes and sells various apparel and products, including cooling towels, boot-foot and stocking-foot waders, outdoors gear, insulated boots, men's and women's apparel, and other products.

15.     Guntersville Breathables has purchased, and continues to purchase, garments and footwear from abroad and imports and sells these products in the United States.

16.     During the relevant time period, Guntersville Breathables has sold millions of dollars of products in the United States which it has imported from abroad, and has gross sales of approximately $30 million annually.

17.     Defendant Tori Chase Handley is the CFO of Defendant Guntersville Breathables. He assisted in perpetuating the scheme to defraud the Government

described here. He instituted, planned, procured, and acted in furtherance of the schemes described here, contrary to the advice and urging of Relator Chiba. His last known home address was 3247 Beulah Road, Boaz, AL 35957.

18.     Defendant R. Christopher Lumpkin is the assistant to the CEO, logistics manager, and freight forwarder of Defendant Guntersville Breathables. He initiated and assisted in the creation of the scheme to defraud the Government used by Guntersville Breathables. He instituted, planned, procured, and acted in furtherance of the schemes described here, contrary to the advice and urging of Relators. His last known home address is 104 1st Ave NE, Apt. 33, Arab, AL 35016.

## IV.   Jurisdiction and Venue

19.     This action arises under 31 U.S.C. § 3729 *et seq.*, commonly known as the False Claims Act.

20.     This Court has jurisdiction over this action under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, because this civil action arises under the laws of the United States and at least one of the Defendants resides and can be found in Alabama and transacts business in Alabama.

21.     Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a) because at least one Defendant that operated in concert with other Defendants resides, can be found in, and operates and transacts business in the Northern District of Alabama.

22.     Relator has complied with the requirements of 31 U.S.C. § 3730(b)(2).

## V.     Governing Law: The False Claims Act

23.     The False Claims Act provides in part that certain acts are prohibited by law, and any person or corporate entity that violates the False Claims Act is liable for damages, penalties, and other relief, including exclusion from participation in Federal programs:

 (a) Liability for certain acts.

(1) In general. Subject to paragraph (2), any person who—

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

> (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

> (E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

> (F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or

> knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729.

## VI.   Laws Governing Payment of Customs Duties

24.    For all merchandise imported into the United States, an importer or its agent must, using reasonable care, file appropriate documents with Customs & Border Protection that allow Customs & Border Protection to assess the customs duties due on the merchandise. 19 U.S.C. § 1484(a)(1)(B).

25.    The documents required to be filed with Customs & Border Protection include, among other things, (i) an entry summary (Form 7501) that declares the value of the merchandise and the applicable duty rate; and (ii) a commercial invoice that provides verification of the value of the merchandise. *See, e.g.*, 19 C.F.R. §§ 141.0a, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a).

26.    Generally, the importer is required to deposit estimated duties with Customs & Border Protection at the time of entry. 19 U.S.C. § 1505; 19 C.F.R. § 141.101. The amount of customs duty owed is equal to the value of the imported merchandise multiplied by the applicable duty rate.

27.    The value or approximate value of the imported merchandise must be declared by the importer in the commercial invoice and entry summary. Federal law provides that every importer must file a declaration stating that the values set forth on these documents are accurate. 19 U.S.C. § 1485.

28.    Each Form 7501, therefore, contains an explicit declaration of compliance that each importer of record or the importer's authorized agent must sign, which states, in pertinent part, that the signatory declares "the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all I will immediately furnish to the appropriate Customs & Border Protection officer any information showing a different statement of facts." Customs & Border Protection Form 7501 at Box 36.

29.    The importer's express certification of compliance is relied upon by the United States in the collection of duties.

30.    Guntersville Breathables, like many other importers, uses a customs broker or freight forwarder to assist in clearing goods for entry by preparing the entry summary and other necessary paperwork and calculating duties. The customs brokers hired by Guntersville Breathables for this purpose, to whom Guntersville Breathables issued a power of attorney, completed the relevant entry summaries based upon information provided by Guntersville Breathables.

31.    Though the duty rates vary for the products Guntersville Breathables imports, generally the cleated boot-foot waders at issue in this case were commonly required to be paid at 37.5%, which is the rate for "[w]aterproof footwear with outer soles and uppers of rubber or plastics." Harmonized Tariff Schedule of the United States (2017) at Ch. 64.

32.    The duty rates for the insulated boots at issue in this case were commonly required to be paid at 37.5%, which is the rate for footwear with uppers to "protect against water, chemicals, or inclement weather." Harmonized Tariff Schedule of the United States (2017) at Ch. 64.

## VII.   Factual Allegations

33.    Guntersville Breathables, Lumpkin, and Handley have participated in a scheme to defraud the United States Government by systematically under-reporting and illegally avoiding amounts of customs duties that it owes to the Government.

### A. *Guntersville Breathables Purchases Products from China for Sale in the United States.*

34.     Guntersville Breathables manufactures boot-foot waders for sale in the United States.

35.     These boot-foot waders are, generally speaking, made up of two component parts. There is a rubber boot at the bottom of the boot-foot wader, and then there is a waterproof fabric upper.

36.     During the time period from between 2006 and 2015, Guntersville Breathables purchased rubber boots from manufacturers including East Rock Ltd. of Beijing, China and Zhejiang Native Produce & Animal By-products IE Group Co., Ltd., known as ZJNAC, of Hangzhou, China.

37.     Generally, these specialized boots are shipped to the factories at which the waterproof fabric uppers are manufactured. The boots are attached or glued to the upper based on the specifications provided by Guntersville Breathables. The finished product is then shipped to Guntersville Breathables for sale in the United States.

38.     During the time period from between 2006 and 2015, Guntersville Breathables purchased uppers from manufacturers including Dynaway Industrial Co., Ltd. of Taichung City, Taiwan; Pacific Eagle Enterprise Co., Ltd./PE of Taichung City, Taiwan; and Chung Won Trading Co. of Busan, South Korea.

39.     Guntersville Breathables also manufactures for sale through V.F. Grace, Inc. in Alaska insulated boots.

40.     These insulated boots are knee-high and are rubber with a neoprene lining.

41.     These insulated boots are sold by Guntersville Breathables after import from Beijing, China, where they are made by East Rock Ltd.

### B. *Guntersville Breathables Documents its Purchases with Purchase Orders.*

42.     Guntersville Breathables imports both the boot-foot waders and knee-high insulated boots for sale in the United States. It imports those articles under different schemes.

### i. *Guntersville Breathables Documents Boot-Foot Wader Purchases with Separate Purchase Orders from Its Suppliers.*

43.     Guntersville Breathables is billed separately by each supplier for its part in the supply chain for boot-foot waders: It receives invoices from the boot manufacturers, and separate invoices from the manufacturers of the uppers.

44.     The invoices for each component product combine to reflect the true cost of the respective finished products purchased by Guntersville Breathables.

45.     The value of the boot-foot waders declared to Customs & Border Protection on each Form 7501 should be at least the combined amount of the cost of

the boots, the cost of the uppers, and an assembly charge for the boot-foot waders imported by Guntersville Breathables.

### ii. *Knee-High Insulated Boots are Invoiced in a Different Way than the Boot-Foot Waders.*

46.    The insulated boots imported for sale in Alaska by V.F. Grace are invoiced as one unit.

47.    East Rock submits to Guntersville Breathables invoices for these knee-high insulated boots. They are invoiced as one unit because they are manufactured and sold as a unified product.

### C. *Guntersville Breathables Submits Forms 7501 that Fraudulently Misstate the Value of Imported Products.*

48.    To import boot-foot waders and insulated boots from abroad, Guntersville Breathables has, at all relevant times, worked with freight forwarding companies who help manage its supply chain and import issues.

49.    From approximately 2006 to 2012, Guntersville Breathables worked with Panalpina as its freight forwarder.

50.    Defendant Lumpkin's mother was one of the primary contacts for Guntersville Breathables at Panalpina.

51.    From approximately 2012 to the present, Guntersville Breathables has worked with V. Alexander & Co., Inc. out of Nashville, Tennessee as its freight forwarder.

52.     Julian Schmid is the contact person for Guntersville Breathables in the Nashville office of V. Alexander & Co.

53.     Guntersville Breathables, as importer of record, is legally responsible for submitting the necessary documentation to Customs & Border Protection, including the entry summary that states the value of the products being imported and the amount of customs duties Guntersville Breathables owes the Government.

54.     To do this, it submits documentation to its freight forwarder.

55.     Based on Relators' personal knowledge, the documents submitted are commercial invoices prepared by Guntersville Breathables.

### i.  Boot-Foot Waders

56.     The commercial invoices for boot-foot waders should be based on the prices it paid for the component product as reflected on the invoices that it receives from its suppliers.

57.     Typically, the commercial invoice numbers used and other relevant factual information to discern the duties owed appear in boxes 28 through 31 of the Form 7501.

58.     Among that information would be a product code. The code numbers 6401, 6402, 6403, 6404, and 6405 were used designate the boots that were later attached to the uppers to make boot-foot waders.

59.    The commercial invoices Guntersville Breathables presented to Customs & Border Protection during the relevant period under-reported the value of the finished products by as much as 40%. Based upon these falsely undervalued invoices, Guntersville Breathables avoided paying a significant portion of the customs duties that it owed to Customs & Border Protection.

60.    Under this scheme, the falsely undervalued invoices would show only one set of product costs—typically only for the upper. The invoices would not, however, show the costs for the boot that had been attached to the upper.

61.    Specifically, although the average total price Guntersville Breathables paid to the two suppliers of the component parts for boot-foot waders was approximately $105.00 (for certain products), the invoices Guntersville Breathables filed with Customs & Border Protection for the boot-foot waders routinely listed the price as only approximately $85.00 per unit or less.

### ii.    Knee-High Insulated Boots

62.    Guntersville Breathables regularly misstates the customs duty rate for insulated boots to avoid paying the full amount of customs duties it owes.

63.    The product codes for the insulated knee-high boots are 402297, 402370, 402461, 402594, 402776, 402859, 402867, and 402933, which were designated as Alaska Tuff Marine boots, and product codes 402974, 40337, 403543,

405258, 405662, 405704, 406884, and 406934 for those designated Alaska Tuff Marine hip boots.

64. The commercial invoices Guntersville Breathables presented to Customs & Border Protection during the relevant period misclassified the tariff rate for these boots.

65. The insulated boots were listed under category 6404.19.9030, which has a rate of 9%, when they should have been listed under category 6404.19.2030, which has a rate of 37.5%.

66. In 2010, Chiba asked Defendant Lumpkin whether this coding was correct. Lumpkin replied that, because the boots were not specifically designed as protective gear, but rather "designed for comfort" that they were correctly listed. This is inaccurate.

67. Based on Relators' calculations, Guntersville Breathables saved approximately $31,000 per year over the course of approximately seven years.

68. Guntersville Breathables provided these grossly undervalued invoices to the customs brokers who filed the required documentation with Customs & Border Protection on its behalf. Guntersville Breathables falsely represented to the customs brokers that the invoices were true and accurate.

69. The submission of these fraudulent invoices to Customs & Border Protection and corresponding false representations to Customs & Border Protection

as to the value of the boot-foot waders and insulated boots resulted in Guntersville

Breathables avoiding nearly $1 million in duties for the products it imported over

the course of at least ten years.

### D. Lumpkin and Handley Conspire to Create and Execute a Scheme for Guntersville Breathables to Defraud the Government.

70.    In approximately October 2012, Guntersville Breathables hired

Defendant Handley as an inventory analyst and logistics specialist.

71.    Handley was, at the time, a certified public accountant in Alabama

(registration number 12174), but has moved to inactive status.

72.    In approximately April 2015, Handley was promoted to CFO of

Guntersville Breathables.

73.    From approximately 1996 to 2000, Defendant Lumpkin worked as an

import manager for Panalpina. He then was promoted to operations manager at

Panalpina in 2001 and worked in that role, which included compliance, for

approximately two years.

74.    From approximately 2003 to 2007, Lumpkin worked as a finance and

accounting manager for Panalpina, based in Chicago. He continued working for

Panalpina until approximately November 2008, when he was hired by Guntersville

Breathables as a strategic planning analyst.

75.     At Guntersville Breathables, Lumpkin was personally responsible for interacting with the freight forwarder retained by Guntersville Breathables and for other areas concerning logistics and supply chain management.

76.     Lumpkin was aware of, and took actions in furtherance of, the fraudulent invoice scheme.

77.     Specifically, Lumpkin orchestrated the scheme by which the commercial invoices Guntersville Breathables submitted to Panalpina did not reflect the true value of the goods imported.

78.     As stated above, during 2007, when Panalpina was the freight forwarder for Guntersville Breathables, the contact person with whom Lumpkin interacted with his mother.

79.     During 2010, shortly after Chiba joined Guntersville Breathables, he noted to Lumpkin that all import documents should show invoice information for both boots and uppers when boot-foot waders were imported.

80.     Despite this knowledge, Lumpkin took no steps to change Guntersville Breathables invoicing practices on any past or future transactions.

81.     Lumpkin explained that there was an internal accounting system that addressed this and it had been worked out with Panalpina.

82.     Chiba, believing that Lumpkin was telling the truth, did not investigate this matter further, and had no reason to believe that the Forms 7501 were being fraudulently completed and submitted to the Government.

83.     In approximately 2014, a potential buyer became interested in acquiring Guntersville Breathables.

84.     During that time period, Chiba was tasked with assisting in the process of due diligence. In connection with those duties, Chiba was unable to reconcile the customs duties Guntersville Breathables paid the Government with the inventory of boot-foot waders sold by Guntersville Breathables. The amounts paid to the Government appeared substantially lower than what should have been paid.

85.     Chiba investigated this discrepancy and asked Defendant Handley specifically why the customs duties amounts were inaccurate, at which point he was told by Handley that Defendant Lumpkin "said to do it this way."

86.     At that point, Chiba and Maples required Handley to pay the full amount of customs duties owed on a going-forward basis.

87.     Handley and Lumpkin had created an agreed-upon manner of conducting business in furtherance of Guntersville Breathables' fraudulent-invoice scheme; the purpose of the agreement was to aid Guntersville Breathables in avoiding detection by Customs & Border Protection of its scheme to underpay the customs duties owed to the Government.

88.     Lumpkin resigned from Guntersville Breathables as a result of his misconduct.

89.     During the time period when the Forms 7501 were completed with the correct and full value of both component products, the profit margin for boot-foot waders sold by Guntersville Breathables decreased from 26% to 6%.

90.     Guntersville Breathables increased its wholesale price for the boot-foot waders to account for the correct, higher amount of customs duties it paid.

91.     Maples left Guntersville Breathables in late 2014, and Chiba left Guntersville Breathables in 2015.

92.     After Maples and Chiba left Guntersville Breathables, Lumpkin was rehired by the company.

93.     Guntersville Breathables thereafter reduced its wholesale price for boot-foot waders to an amount consistent with the wholesale price it charged when it was underreporting the amount of customs duties it owed the Government.

94.     On information and belief, the only way Guntersville Breathables could sell its imported boot-foot waders at the wholesale price they currently use is to revert back to their previous scheme to defraud the United States Government of customs duties that they should pay.

95.     As Relators described above, the false commercial invoices created by Guntersville Breathables, when compared to the supplier invoices for the two

underlying component parts of the boot-foot waders sold by Guntersville Breathables, create the false impression that Guntersville Breathables was importing only one component of its boot-foot waders.

96.   Guntersville Breathables provided these false commercial invoices to its freight forwarders for creation of the false and fraudulent Forms 7501.

97.   In reality, Guntersville Breathables imports at least one other component of the boot-foot waders that had been attached or glued together to create the final product, but it did not include the value of this second component part in its certification to the Government.

98.   Lumpkin, Handley, and Guntersville Breathables created these documents that gave a false impression regarding the products being imported to mask the invoice scheme, should it raise questions with Customs & Border Protection or any other third party.

99.   Lumpkin played a direct role in this conspiracy, including by transmitting the inaccurate invoices to freight forwarders and failing to disclose the purchase orders for each component of the boot-foot waders, both of which he knew to be false and/or misleading.

100.   Handley played a direct role in this conspiracy, including by creating a fraudulent internal accounting system, helping create the inaccurate invoices sent to

freight forwarders, and failing to disclose the purchase orders for each component of the boot-foot waders, all of which he knew to be false and/or misleading.

101.   When Chiba confronted Handley regarding this wrongful conduct, Handley pleaded with Chiba not to disclose this information because he was a certified public accountant and was acting contrary to his ethical requirements and professional standards, including his requirements of disclosure of misconduct.

## VIII.  Causes of Action

### Count I: Violations of 31 U.S.C. § 3729(a)(1)(G) Concerning Reverse False Claims Submitted on Forms 7501
*Against Guntersville Breathables, Lumpkin, and Handley*

102.   Relators incorporate and reallege the relevant factual allegations above as if set forth fully herein.

103.   As set forth above, Defendants knowingly made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties, to the United States.

104.   The Government incurred losses relating to customs duties underpaid by Defendants because of their wrongful and fraudulent conduct.

105.   By virtue of the false records or statements made by Defendants, the Government suffered damages.

106.   These false claims were presented or caused to be presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

107.   The United States is entitled to three times the total damages sustained as a result of the Defendants' violations.

108.   The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendants' false claims.

109.   Relators are entitled to reasonable attorney's fees and costs under 31 U.S.C. § 3730(d)(1).

### Count II: Violations of 31 U.S.C. § 3729(a)(1)(C) For Conspiracy to Submit Fraudulent Forms 7501
### *Against Lumpkin and Handley*

110.   Relators incorporate and reallege the relevant factual allegations above as if set forth fully herein.

111.   Relators seek relief under Section 3729(a)(1)(C) of the False Claims Act.

112.   As set forth above, Defendants Handley and Lumpkin conspired to make, use, or cause to be made or used false records and/or statements to conceal,

avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties, to the United States.

113.   The Government incurred losses relating to customs duties underpaid by Defendants because of their conspiracy to commit wrongful and fraudulent conduct.

114.   As set forth above, because Defendants Lumpkin and Handley knowingly conspired to make, use, or cause to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties, to the United States, the Government incurred losses relating to customs duties underpaid by Defendant Guntersville Breathables because of the wrongful and fraudulent conduct of Defendants Lumpkin and Handley.

115.   The United States is entitled to three times the total damages sustained as a result of the Defendants' violations.

116.   The United States is entitled to a civil penalty of not less than $5,500.00 and not more than $11,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendants' false claims.

117.   Relators are entitled to reasonable attorney's fees and costs under 31 U.S.C. § 3730(d)(1).

## IX.   Prayer for Relief and Jury Demand

Relators pray that this Court enter an order granting the following judgment and relief:

(a)    Ordering the Defendants to pay the United States Government three times its actual damages resulting from the Defendants' violations of the False Claims Act;

(b)    Ordering Defendants to pay the United States Government a civil penalty for each false claim as set forth in the False Claims Act;

(d)    Awarding Relators an amount this Court decides is reasonable for collecting the civil penalty and monetary damages by pursuing this matter, which award, by statute shall not be less than 15% nor more than 25% of the proceeds of this action or the settlement of any such claim, if the Government intervenes in the action and not less than 25% nor more than 30% if the Government declines to intervene in the action;

(e)    Ordering the Defendants to pay Relators' attorneys' fees and costs; and

(f)    Granting such other relief as the Court may deem just and proper.

**Relators demand a trial by a struck jury.**

Respectfully submitted,

Robert E. Battle (ASB-7807-T67R)
Adam P. Plant (ASB-6324-A64P)
**BATTLE & WINN LLP**
2901 Second Avenue South, Suite 220
Birmingham, Alabama 35233
Tel: (205) 397-8160
Fax: (205) 397-8179

*Attorneys for Relators Rich Chiba and Drake Maples*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2017 I hand-filed filed the foregoing with the Clerk of the Court in person. Relators will serve only the following during the pendency of the seal of this matter, as required by 31 U.S.C. § 3170(b)(2), in accordance with Federal Rule of Civil Procedure 4(*i*):

> Jeff Sessions
> Attorney General of the United States
> Department of Justice
> 10th & Constitution Aves. N.E.
> Washington, DC 20530
>
> Robert O. Posey
> United States Attorney
> Northern District of Alabama
> 1801 4th Avenue North
> Birmingham, Alabama 35203

This Complaint has been filed in camera, shall remain under seal for at least 60 days, and shall not be served on the Defendants until the court so orders.

*Attorney for Relators*